UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAETTA GREEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-2432-B |
| | § | |
| MEDCO HEALTH SOLUTIONS OF | § | |
| TEXAS, LLC; MEDCO HEALTH | § | |
| SOLUTIONS, INC.; and AON | § | |
| HEWITT ABSENCE | § | |
| MANAGEMENT, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are a Motion for Partial Summary Judgment (doc. 51), filed on December 7, 2012 by Plaintiff Maetta Green, and a Motion for Summary Judgment (doc. 57), filed on December 17, 2012 by Defendants Medco Health Solutions of Texas, LLC ("Medco LLC"), Medco Health Solutions, Inc. ("Medco Inc."), and Aon Hewitt Absence Management, LLC, f/k/a Disability Management Alternatives, LLC d/b/a Hewitt LCG ("Aon").[1] For the reasons that follow, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendants' Motion.

## I.

## BACKGROUND

A.    *Employment and Attendance Policies*

In this action, Plaintiff alleges that she is a former employee of Defendant Medco LLC and

---

[1]Medco Health Solutions Inc. Welfare Benefits Plan was an original defendant to this action, but the parties stipulated to its dismissal on June 1, 2012. Doc. 45, Stipulation.

was wrongfully terminated and unlawfully discriminated against by her employer and its agents. Doc. 33, Am. Compl. Plaintiff began her employment in March 2007 with Medco LLC as a Customer Service Representative. *Id.* ¶ 14. Plaintiff was promoted in January 2008 to Resolution Expert. Doc. 58, Br. at 2-3. In April 2008, she was again promoted to Resolution Team Leader. *Id.* at 3. In her positions as a customer service representative and resolution expert, Plaintiff was part of a collective bargaining unit with the United Steelworkers. *Id.* at 3. Participation in the bargaining unit subjected Plaintiff to Medco LLC's attendance policy. The attendance policy provides that an employee who incurs over eight unexcused "occurrences" will be terminated. *Id.* An absence of greater than four hours during a single shift constitutes one occurrence. *Id.* n.6.

Resolution team leaders were not subject to the attendance policy until October 1, 2010 when they joined the collective bargaining unit. *Id.* n.9. Prior to that date, resolution team leader absences were evaluated under a general reasonableness rule on a case-by-case basis. *Id.* at 3. As such, Plaintiff was not subject to the eight-absence limit of the attendance policy from April 2008 until October 2010, but became subject to the policy on October 1, 2010.

As a resolution team leader, Plaintiff was reprimanded in September 2008 for fourteen late arrivals and nine unscheduled absences since May 2008. Doc. 58, Br. at 4. Plaintiff was warned that further incidents would result in discipline, but Plaintiff continued to have poor attendance. *Id.* Plaintiff was counseled in May 2009 and October 2009 for taking excessive lunches on seventeen occasions and for excessive absences and tardiness. *Id.* Under the general reasonableness policy, Plaintiff was not terminated for these incidents.

Around February 2010, Plaintiff requested leave under the Family Medical Leave Act ("FMLA") to address a persistent cough. *Id.* at 5. Plaintiff was granted intermittent FMLA leave not

to exceed 88 hours each month. In May 2010, Plaintiff's intermittent FMLA leave was changed to 97 hours every three months. *Id.* The parties appear to agree that Plaintiff's post-October 2010 absences at issue in this case are not related to her FMLA leave.

In June 2010 and the months that followed, Plaintiff experienced headaches, dizziness, blurry vision, and vertigo, which caused her to leave work early. Doc. 62, Br. at 1.[2] As her symptoms worsened, she underwent multiple medical appointments and treatments with different physicians and specialists. *Id.* at 2-4. Plaintiff was ultimately diagnosed with idiopathic intracranial hypertension and empty sella syndrome. Doc. 33, Am. Compl. ¶ 27.

B.   *Disability Benefits Claim and First Appeal*

Around June 22, 2010, Plaintiff filed a claim with her employer Medco LLC for short-term disability benefits under the "Medco Disability Plan," which was administered by Defendants Medco Inc. and Aon.[3] Doc. 62, Br. at 2. The plan provided benefits of up to 100% of an employee's base compensation for not more than 25 weeks if the employee could not work due to injury or illness. Doc. 33, Am. Compl. ¶ 16. In order to receive benefits, the employee had to be "actively at work and become unable to perform the material and substantial duties of her regular occupation due to illness, pregnancy, or accidental injury for seven consecutive calendar days." Doc. 33, Am. Compl. ¶ 17. Short-term disability benefits were offered at no cost to the employees and were not subject to the Employee Retirement Income Security Act ("ERISA") or its implementing regulations. Doc. 58, Br.

---

[2]On December 20, 2012 and with leave of the Court, Plaintiff filed an Amended Brief (doc. 62) in support of her Motion for Partial Summary Judgment, to replace her original Brief (doc. 52).

[3]Medco Inc. is responsible for deciding the eligibility of employees for short term disability benefits. Doc. 33, Am. Compl. ¶ 18. Medco Inc. delegated its authority to determine benefits eligibility to Aon. *Id.* ¶ 19.

at 5-6.

Defendant Aon denied Plaintiff's claim for short term disability benefits on July 9, 2010 for failure to provide any proof of disability. Doc. 62, Br. at 2. Plaintiff's physician failed to return Aon's calls and requests for medical documentation, and Plaintiff failed to respond to Aon's request that she contact Aon since her physician had not provided the necessary information. Doc. 58, Br. at 8. Aon notified Plaintiff that she had a right to appeal the denial. *Id.*

On July 24, 2010, Plaintiff appealed the denial and, in the meantime, attended additional medical appointments and received additional diagnoses. Doc. 62, Br. at 2-3. Aon reviewed Plaintiff's medical evidence and retained a physician, Dr. Tamara Bowman, to "peer review" the documentation and contact Plaintiff's physicians. Doc. 58, Br. at 11. Dr. Bowman contacted each of Plaintiff's physicians and determined that Plaintiff had no functional impairment and was able to work. *Id.* at 11-12. On September 29, 2010, Defendant Aon denied Plaintiff's appeal for short-term disability benefits because "there was no compelling medical evidence of a severe disabling impairment that would preclude Ms. Green from performing the material and substantial duties of her job." Doc. 33, Am. Compl. ¶ 32.

C.    *Discussions with Defendants and Final Appeal*

A Medco Human Resources employee, Kevin Cochener, sent Plaintiff a letter on October 6, 2010 explaining that Plaintiff had been on unauthorized leave. *Id.* ¶ 33. Plaintiff and Cochener spoke on October 7, though the parties dispute the contents of the call. On October 15, Plaintiff's counsel wrote to Cochener and indicated that Plaintiff was pursuing a return-to-work release from her physician and hoped that the parties could "begin discussions" to "determine a reasonable accommodation that would allow [Plaintiff] to perform the essential functions of her job when she

returns to work." Doc. 62, Br. at 4. Cochener did not respond to the letter. *Id.* On October 25, Plaintiff told Cochener by phone that she was released for work but was unable to return due to an adverse reaction to her medication. Doc. 58, Br. at 13. One day later, on October 26, 2010, Plaintiff attempted to return to work with a doctor's note permitting her to work nights. Doc. 62, Br. at 4. Plaintiff had not told Defendants that she would attempt to return to work that day, and Defendants did not allow her to return because they had not received sufficient notice after her six-month absence. Doc. 70, Reply at 11; doc. 59-18, App. at 609 (Roberts' deposition testimony explaining that the employer needs 48 hours advance notice of an employee's return to work in order to ensure that the work release is valid and in order to gain access to Aon's system). According to Defendants, one of Medco's human resources employees, Kathy Roberts, explained that in order to return to work, Plaintiff would need to submit documentation to cover all of her prior unexcused absences. Doc. 58, Br. at 13. Roberts also allegedly informed Plaintiff that, in order to change her schedule to a night shift, she would need to support such a request for accommodations with additional information. *Id.* On November 3, 2010, Plaintiff left a voicemail for Cochener and stated that her doctor had rescinded her return-to-work release due to adverse reactions to medicine, so Plaintiff was unable to return. *Id.*

On November 12, 2010, Plaintiff filed her second and final appeal of the denial of her claim for short-term disability benefits. She supplemented her appeal with additional evidence. Doc. 33, Am. Compl. ¶ 35. Aon hired Dr. Vaughn Cohan, who spoke with two of Plaintiff's physicians, to review Plaintiff's claim. Doc. 58, Br. at 15-16. According to Defendants, the physicians indicated that Plaintiff should be able to work, and Dr. Cohan concluded the same. *Id.* at 16. On November 26, 2010, Defendant Aon denied Plaintiff's appeal, explaining that the medical evidence submitted

in support of the claim did not objectively demonstrate that she was unable to work and thus entitled to short-term disability benefits. Doc. 33, Am. Compl. ¶ 37. At that time, Aon's denial of the appeal was sent to Plaintiff but was not sent to Medco LLC. Doc. 58, Br. at 17-18.

D.    *Request for Accommodations and Termination*

Plaintiff's counsel sent Defendants a letter on December 1, 2010 noting that Plaintiff's physician had given her a new release to return to work and that Plaintiff sought one of the following accommodations in order to return to work: (1) a night-shift schedule, (2) a day schedule that would allow her to leave work to attend appointments and make up work time later, or (3) a split-shift schedule to accommodate her appointments. *Id.* ¶ 39. Plaintiff's counsel called Cochener on December 6, but Cochener did not return counsel's call or respond to the letter. *Id.* ¶¶ 40-41; doc. 62, Br. at 4.

On December 7, 2010, Aon informed Medco LLC that Plaintiff had lost her final appeal for short-term disability benefits. Doc. 58, Br. at 18. On December 8, 2010, Plaintiff's counsel faxed Cochener another letter requesting accommodations but received no response. Doc. 62, Br. at 4-5. The next day, on December 9, 2010, Medco LLC terminated Plaintiff, pointing to her excessive unexcused absences in violation of Medco's attendance policy. Doc. 33, Am. Compl. ¶ 42; doc. 62, Br. at 5.

E.    *Procedural History*

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to File a Civil Action on July 7, 2011. Doc. 33, Am. Compl. ¶¶ 10-11. Plaintiff filed a Complaint (doc. 1) against Defendants on September 19, 2011. Plaintiff filed a First Amended Complaint (doc. 33) on April 4, 2012, which constitutes the operative

pleading in this action. The Amended Complaint alleges: two causes of action for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* against Defendant Medco LLC only; breach of contract against the two Medco Defendants; violation of the Texas Insurance Code, chapter 541, subchapter B, against the two Medco Defendants; breach of fiduciary duty against all Defendants; and breach of the duty of good faith and fair dealing against all Defendants. Doc. 33, Am. Compl. ¶¶ 44-63. Plaintiff seeks statutory, actual, liquidated, and exemplary damages, equitable relief in the form of reinstatement to her employment position with Medco LLC, and costs and attorney's fees. *Id.* ¶¶ 64-68, Prayer.

Plaintiff filed a Motion for Partial Summary Judgment (doc. 51) on December 7, 2012. In her motion, Plaintiff seeks entry of judgment only as to Defendant Medco LLC's liability under the ADA for failure to accommodate her. Doc. 51, Mot. at 1. Defendants jointly filed a cross-Motion for Summary Judgment (doc. 57) on December 17, 2012, moving for judgment on all of Plaintiff's claims. Both motions for summary judgment have been fully briefed and are ripe for review. This Court has original jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## II.

## LEGAL STANDARDS

The purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.* at 325.

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Id.* Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

Plaintiff moves for partial summary judgment on her ADA accommodation claim against Defendant Medco LLC. Doc. 62, Br. at 1. Defendants move for summary judgment on all of Plaintiff's claims. Doc. 57, Mot. at 2. The Court addresses each claim, in turn, below.

A.     *ADA Discrimination*

Plaintiff first brings a cause of action under the ADA, alleging that she was disabled and that Medco LLC, motivated by her disability, terminated her. Doc. 33, Am. Compl. ¶¶ 44-45, 48-49. Defendants move for summary judgment on this claim, which Plaintiff opposes.

Plaintiff does not allege that she has direct evidence of discrimination on her ADA claim, so her claim is subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003); *Adeleke v. Dall. Area Rapid Transit*, 487 F. App'x 901, 903 (5th Cir. 2012). Under *McDonnell Douglas*, a plaintiff must initially present evidence of a prima facie case of discrimination. *Manning*, 332 F.3d at 881. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* The defendant's burden, however, is only one of "production, not persuasion, and involves no credibility assessment." *Jinks v. Advanced Prot. Sys., Inc.*, 162 F. Supp. 2d 542, 546 (N.D. Tex. 2001). If the defendant meets its burden, then, under the ADA, "the burden shifts back to the plaintiff to establish that the defendant's reason either is a pretext for discrimination or is only one of the reasons for its conduct and another motivating factor is the plaintiff's protected characteristic." *Adeleke*, 487 F. App'x at 903.

1.      Prima Facie Case

A plaintiff who alleges discrimination on the basis of a disability establishes a prima facie case under the ADA by showing that "1) he has a disability; 2) he is qualified for the position in which he seeks employment; and 3) he was discriminated against because of his disability." *Griffin v. UPS*, 661 F.3d 216, 222 (5th Cir. 2011); *Maples v. Univ. of Tex. Med. Branch at Galveston*, No. 12-41226, 2013 U.S. App. LEXIS 8535, at *4 (5th Cir. Apr. 26, 2013) (explaining that discrimination must be a "motivating factor" of the adverse action).

Defendants do not dispute that Plaintiff is "disabled."[4] Doc. 70, Reply at 1. Rather, Defendants argue that Plaintiff was not qualified for her position because she was unable to perform an essential function of her position, *i.e.*, the ability to attend work. Doc. 58, Br. at 20. As such, Defendants contend that Plaintiff's ADA discrimination claim fails under the *prima facie* test. *Id.* "In general, the 'essential functions' of a job are the fundamental job duties of the employment position the individual with a disability holds or desires." *Cortez v. Raytheon Co.*, No. 3:08-CV-801-K, 2009 U.S. Dist. LEXIS 91112, at *14 (N.D. Tex. 2009). An ability to appear for work is an essential element of most jobs. *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (holding that "an essential element of any job is an ability to appear for work and to complete assigned tasks within a reasonable period of time" (alterations and citation omitted)); *see also Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) ("It is a rather common-sense idea that if one is not able to be at work, one cannot be a qualified individual." (internal quotation marks and

---

[4]Plaintiff presents evidence to prove that she was disabled. Plaintiff misconstrues Defendants' legal argument, believing that Defendants oppose her allegations of disability rather than her qualification. *See* doc. 67, Br. at 18-20. Defendants have conceded that Plaintiff is disabled for the purposes of summary judgment on the ADA claims, so whether Plaintiff is disabled is not a matter in dispute. Doc. 70, Reply at 1.

alterations omitted)).

Defendants provide summary judgment evidence in the form of Plaintiff's deposition testimony that Plaintiff admitted that attendance was an important part of her job. Doc. 59-3, App. at 88. Defendants also submit summary judgment evidence in the form of a job announcement that an excellent attendance record was a minimum qualification for Plaintiff's position. Doc. 59-4, App. at 112; *see* 42 U.S.C. § 12111(8) ("[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."). Defendants explain that Plaintiff was absent from work for six full months due to her disability. Doc. 58, Br. at 22; doc. 59-5, App. at 141 (Cochener deposition testimony explaining that Plaintiff had not attended work from June 11, 2010 through December 9, 2010). Defendants aver that because Plaintiff was unable to attend work, she was not qualified for her position and they were entitled to terminate her. Doc. 58, Br. at 22.

For her part, Plaintiff admits that her disability "resulted in her inability to work for several months." Doc. 62, Br. at 8. Plaintiff also admits that she was subject to the attendance policy at the time she was terminated. Doc. 67, Br. at 21-22. However, she proffers that, prior to her disability, she had missed more days than was allowed under the attendance policy without being fired, so attendance must not have been an essential requirement of the job or she would have been fired earlier. Doc. 67, Br. at 21-22. Plaintiff similarly contends that "[i]f compliance with the [attendance] policy had become an essential function of Plaintiff's job, certainly Defendants would have told her so." Doc. 67, Br. at 22.

The flaw in Plaintiff's argument is her failure to recognize that Defendants do not assert that

"strict compliance" with the eight-day absence limit in the attendance policy was an essential function of her job, but that attendance generally was an essential function.[5] *See* doc. 70, Reply at 2. The lack of notice that Plaintiff's position became subject to the attendance policy on October 1, 2010 when resolution team leaders joined the union therefore has no bearing on the issue. Plaintiff fails to raise a dispute of fact, and indeed appears to admit, that attendance was an important part of her job and that she was unable to attend work for the six months leading up to her termination. The Court concludes therefore, from the summary judgment record, that attendance was an essential function of Plaintiff's position and that Plaintiff 's extended absence rendered her unqualified for her position from June 2010 at least until December 1, 2010.

Plaintiff next insists that, even if she was not "qualified" for her position from June through November 2010, on December 1 she notified Defendants that she would be able to attend work, *i.e.*, become "qualified," with reasonable accommodations. Doc. 67, Br. at 23; doc. 69, Reply at 2. Defendants point the Court to one case which concluded that the fact that it was not disputed that attendance was an essential function of the job and the fact that the plaintiff had not been at work for a year was sufficient to demonstrate that the employee was not a qualified individual, even though he was allegedly able to return to work. *See Johnson v. SBC Advanced Solutions, Inc.*, No. 3:02-CV-1637-L, 2004 U.S. Dist. LEXIS 31280, at *15-18 (N.D. Tex. May 21, 2004) (analyzing prior version of the ADA).That case, however, is inapposite for purposes of this analysis because when the employee alleged that he was suddenly able to return to work after a year of absences, he had not

---

[5]Whether attendance is an essential function of a job such that an employee is not qualified if she cannot attend work is a separate and distinct inquiry from whether, in the next stages of the burden-shifting framework, the employer can demonstrate that the reasons for termination were based on strict adherence to an attendance policy.

offered any evidence of his ability to do so with or without accommodations, *id.* at *17 n.4, whereas here Plaintiff offered evidence of her ability to return to work and evidence that reasonable accommodations could help her do so. *See* doc. 67, Br. at 22.

The issue of whether a plaintiff is "qualified" for her position appears to be determined at the time of the adverse employment action. *See Morton v. GTE N.*, 922 F. Supp. 1169, 1178 (N.D. Tex. 1996), *aff'd* 114 F.3d 1182 (5th Cir. 1997). Plaintiff has alleged and provided evidence that she was able to attend work on or after December 1 with a reasonable accommodation, so she has demonstrated that she was qualified at the relevant time. Because the plaintiff's burden of demonstrating a *prima facie* case of discrimination is low, the Court will assume that Plaintiff has met her *prima facie* burden and will continue to analyze her discrimination claim under the burden-shifting framework.

2.      Legitimate, Nondiscriminatory Reason

Assuming that Plaintiff has met her *prima facie* burden, the burden of production shifts to Defendants to offer a legitimate, nondiscriminatory reason for terminating Plaintiff. *See Manning*, 332 F.3d at 881.

Defendants offer extensive summary judgment evidence demonstrating that Medco LLC terminated Plaintiff because she had accumulated an excessive amount of unexcused absences. Doc. 57, Br. at 23-24. Defendants explain that Plaintiff was not terminated during the six-month period preceding her termination because Medco LLC was waiting for the decision from Aon as to whether Plaintiff's final appeal would result in her absences being excused based on short-term disability. Doc. 59-18, App. at 612 (Roberts deposition). On December 7, 2010, Medco LLC learned that Plaintiff's final appeal had been denied and that her absences were deemed unexcused. Even starting Plaintiff

with a clean slate of absences on October 1, by December 1, Plaintiff had accumulated two months of unexcused absences, far exceeding the eight-occurrence limit. *See, e.g.*, doc. 59-1, App. at 3-4 (Cochener Aff.). As noted above, Plaintiff does not dispute that she was absent during this time or that she became subject to the attendance policy on October 1. Defendants contend that because Plaintiff had exceeded the allowable absences under the attendance policy, she was terminated. *See* doc. 59-5, App. at 140 (Cochener deposition stating that there have been no exceptions to the attendance policy); doc. 59-18, App. at 606 (Roberts deposition testimony stating that the attendance policy was "strictly enforced"), 634 (King deposition stating that employees are always terminated when their absences exceed the allotted number). Accordingly, the Court concludes that Defendants have satisfied their burden of production in showing that Medco LLC's reason for terminating Plaintiff was based on the non-discriminatory, legitimate reason that Plaintiff had accumulated an excessive amount of unexcused absences in violation of the attendance policy. *See Smith v. Tuesday Morning Corp.*, No. 3-06CV1046-R, 2007 U.S. Dist. LEXIS 97307, at *15 (N.D. Tex. Oct. 2, 2007) ("As a general proposition, an employer's termination of an employee for violation of a neutral attendance policy is legitimate.").

    3.    <u>Pretext</u>

Under the burden-shifting framework, Plaintiff must next demonstrate that Medco LLC's proffered reason for terminating her is actually pretext for its true reason for terminating her, *i.e.*, her disability. *See Adeleke*, 487 F. App'x at 903. As explained below, the Court determines that Plaintiff has not met her burden of demonstrating or raising a dispute of fact as to pretext.

Plaintiff first argues that Medco LLC's reason is pretext because she was never told that she was subject to the attendance policy. Doc. 67, Resp. at 23-24. Generally, an employee's lack of

knowledge or notice of her employer's policy is insufficient to demonstrate that termination decisions made under that policy are pretext. *See Roberts v. Mega Life & Health Ins. Co.*, No. 3:04-CV-756-M, 2005 U.S. Dist. LEXIS 4388, at *16-17 (N.D. Tex. Mar. 22, 2005) (employee's lack of knowledge that she was violating the attendance policy was not evidence of pretext); *Griesbaum v. Aventis Pharms.*, 259 F. App'x 459, 469-70 (3d Cir. 2007) (employee's lack of knowledge of the employer's leave policy, which was readily available, does not establish pretext); *see also Thomas v. Brazos Cnty.*, No. H-06-3917, 2007 U.S. Dist. LEXIS 87818, at *5 n.5, 34-35 n.48 (S.D. Tex. Nov. 29, 2007) (employee's argument that he was unaware of the policies which subjected him to termination based on his conduct was insufficient to establish *prima facie* case of discrimination).

Plaintiff next declares that Defendants did not clear Plaintiff's absences prior to October 2010, despite stating that they would wipe her attendance slate clean once she became subject to the attendance policy. Doc. 67, Resp. at 24; doc. 59-1, App. at 3-4 (Cochener deposition explaining that resolution team leaders were given a clean slate of occurrences on October 1, 2010 when they became subject to the attendance policy). Plaintiff does not provide adequate summary judgment evidence to dispute that her termination was warranted based on her post-October 1, 2010 absences. Further, Plaintiff does not argue that the number of days she was absent after October 1 without a doctor's note, and therefore the number of occurrences under the policy, exceeded eight. *See* doc. 59-1, App. at 4 (Cochener deposition explaining that "Green's unexcused absences from October 1, 2010 to December 1, 2010 constituted occurrences under the Attendance Policy"). Although her termination form mentions that she had been absent since June 2010, she does not dispute that fact but instead unpersuasively surmises that Medco LLC must have terminated her for pre-October absences. Doc. 59-5, App. at 163 (termination form). Plaintiff also indicates that a timeline of

Plaintiff's absences, which she alleges Medco LLC relied upon in terminating her, included pre-October absences. Doc. 67, Br. at 24 (citing doc. 59-5, App. at 156). In response, Defendants clarified that the timeline expresses that "[d]ue to the recent development of the [resolution team leader] department coming under the . . . bargaining unit (effective October 1), the attendance record for Maetta may need to be converted to the bargaining unit's occurrence schedule or to a 'clean slate.' However, it is unclear at this time how that will be handled as it has yet to be negotiated with the Union." Doc. 59-5, App. at 182 (timeline). Thus, on the face of the timeline, it explains that the absences may need to be altered. The timeline is therefore insufficient evidence to dispute Defendant's summary judgment evidence that, when Plaintiff was terminated, the decision was based on only her post-October 1 absences.

In a similar vein, Plaintiff maintains that her two months of absences leading up to her termination should have been counted as only one occurrence under the attendance policy. Doc. 67, Resp. at 24. The attendance policy provides that one occurrence equates to an absence of 4 hours or greater during one shift.  Doc. 59-4, App. at 127. The policy does contemplate that only one occurrence could be assigned to absences of two or more days if the employee provides a confirming doctor's note to the company that the absence was based on a single incident, such as a flu or cold. *Id.* Plaintiff admits that she never provided a doctor's note. Doc. 67, Br. at 24. Moreover, Defendants provide summary judgment evidence explaining that permitting two or more days to count as only one "occurrence" is subject to a reasonableness inquiry. Doc. 59-5, App. at 138 (Cochener deposition). Medco LLC's Human Resources manager, Mechelle King, explained that the provision counting multiple absences as only one occurrence is in place for the typical three-to-five-day leave and that it does not apply to extended leave such as the several months of absences accumulated by

Plaintiff. Doc. 59-20, App. at 633, 645-46 (King deposition). Plaintiff does not present summary judgment evidence to combat Defendants' interpretation of the attendance policy and Medco LLC's calculation of occurrences.

Plaintiff also argues that if her unexcused absences were the true reason for termination, she would have been terminated much sooner. Doc. 67, Resp. at 24-25. Plaintiff's arguments amount to mere speculation and do not address Defendants' summary judgment evidence that she was subject to different attendance policies during her employment as a resolution team leader.

Finally, Plaintiff contends that Medco LLC provided "shifting stories" of its reasons for terminating her, but points the Court to no summary judgment evidence of the alleged shifting stories. Doc. 67, Resp. at 25.

In conclusion, the Court decides that Plaintiff has not adequately raised a dispute of fact through summary judgment evidence that Medco LLC's reason for terminating her for excessive unexcused absences was pretext. Defendants have carried their summary judgment burden in showing that they are entitled to judgment on Plaintiff's ADA discrimination claim. Accordingly, the Court **GRANTS** summary judgment to Defendants on this claim.

B.     *ADA Accommodation*

Plaintiff also raises an ADA claim against Defendant Medco LLC for the failure to reasonably accommodate her disability. Doc. 33, Am. Compl. ¶¶ 44-47, 49. Plaintiff and Defendants both move for cross-summary judgment on this claim, and each opposes the other's motion.

Under the ADA, employer discrimination includes situations where an employer fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A); *Griffin*,

- 17 -

661 F.3d at 224. To establish a *prima facie* case for a failure to accommodate under the ADA, an individual must show that "(1) he had a disability; (2) he was qualified for the job; (3) [his employer] knew of the disability; (4) he requested an accommodation; (5) a reasonable accommodation existed that would have allowed him to perform the essential functions of the job; and (6) the [employer] failed to provide a reasonable accommodation." *Tribble v. Ouachita Parish Police Jury*, No. 12-0843, 2013 U.S. Dist. LEXIS 50543, at *15 (W.D. La. Apr. 8, 2013); *Mzyk v. N.E. Indep. Sch. Dist.*, 397 F. App'x 13, 16 n.3 (5th Cir. 2010). "Once an employee makes a request for reasonable accommodations, the employer is obligated by law to engage in an 'interactive process' or 'a meaningful dialogue with the employee to find the best means of accommodating that disability.'" *Tribble*, 2013 U.S. Dist. LEXIS 50543, at *15 (citing *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009)). "Whether an individual is a qualified individual with a disability is determined as of the time of the employment decision." *Hamm v. Exxon Mobil Corp.*, 223 F. App'x 506, 508 (7th Cir. 2007) (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996), and 29 C.F.R. app. § 1630.2(m)).

1.    Accommodations Requests

Plaintiff argues that she made requests for accommodations from Defendants, but that Defendants never engaged in the interactive process as required by the ADA. Doc. 62, Br. at 8. Plaintiff offers four potential incidents in which she requested accommodations.

First, on October 15, 2010, Plaintiff's counsel wrote to Cochener and indicated that Plaintiff was in the process of requesting a return-to-work release from her physician and hoped that the parties could "begin discussions" to "determine a reasonable accommodation that would allow [Plaintiff] to perform the essential functions of her job when she returns to work." Doc. 62, Br. at

4. The Court concludes that, as a matter of law, the October 15 letter was insufficient to constitute a request for accommodations. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735-36 (5th Cir. 1999) (explaining that the duty to launch the interactive process and to provide a concrete request for a specific reasonable accommodation is upon the employee); *Griffin*, 661 F.3d at 224 ("an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer" (citing *Loulseged*, 178 F.3d at 736)). The request was predicated on Plaintiff's obtaining a return-to-work release and the parties sitting down to "begin" discussing what accommodations Plaintiff might seek. Defendants cannot be made responsible for failing to accommodate Plaintiff at that time since no specific accommodations were requested by Plaintiff and since the request for accommodations was made contingent on obtaining a return-to-work release. *Id.*

Next, on October 26, Plaintiff went to her place of employment with a return-to-work release and asked for a night shift.[6] Doc. 62, Br. at 4. Defendants' human resources representative Roberts advised Plaintiff that she needed more support for her request for a night shift accommodation. Rather than provide supporting documentation, Plaintiff called Cochener on November 3 and stated that her return-to-work release was rescinded and that she would be unable to attend work at all. Doc. 58, Br. at 13. The Court concludes that Defendants took adequate steps in requesting information from Plaintiff to support her accommodations request. Doc. 59-18, App. at 609-10 (Roberts deposition testimony explaining that her policy is to seek more information on the need for an accommodation when unsupported, as was Plaintiff's request), 616 (Roberts email explaining that

---

[6]It is unclear whether Plaintiff considers her October 26 conversation with Roberts to include a request for accommodations, so the Court analyzes it as such out of an abundance of caution.

further information for the requested accommodations was needed); doc. 68, App. at 4 (Plaintiff's

declaration admitting that Roberts requested more sufficient information). Before Defendants were

required to act further, Plaintiff effectively rescinded her accommodations request when she called

Cochener to inform him that she would not be returning to work. Doc. 59-5, App. at 181 (timeline).

Accordingly, the Court concludes that Defendants cannot be liable for failing to provide an

accommodation when Plaintiff admitted that she was unable to return to work with or without an

accommodation at that time. *See Loulseged*, 178 F.3d at 734 ("It is difficult to judge the

reasonableness of accommodations when the employee withdraws before we can say with any

authority what these accommodations would have been."); *EEOC v. Agro Distrib. LLC*, 555 F.3d

462, 471 (5th Cir. 2009) ("The reasonable accommodation analysis is hindered because [the

employee] did not show up for work. Any discussion of the accommodations that might have been

provided or denied is mere speculation."); *Griffin,* 661 F.3d at 225.

　　　　Finally, on December 1 and 8, Plaintiff's counsel sent letters to Defendants requesting one

of three specific accommodations that Plaintiff believed would enable her to return to work and

would make her qualified for her position. Doc. 53, App. at 60-61, 64-65. These included (1) a

night-shift schedule, (2) a day schedule that would allow her to leave work to attend appointments

and make up work time later, or (3) a split-shift schedule to accommodate her appointments. Doc.

33, Am. Compl. ¶ 39. The Court agrees with Plaintiff that the two December requests for

accommodations sufficiently explained that accommodations were needed and even offered proposals

for reasonable accommodations. Doc. 62, Br. at 10. The Court also agrees that Defendants never

responded to the December requests or otherwise engaged in the interactive process. *Id.* Instead,

upon learning that Plaintiff's final appeal had been denied, Medco LLC terminated her.

- 20 -

Rather than dispute these facts, Defendants raise two primary arguments as to why they were not required to engage in the interactive process following the December accommodations requests: first, that Plaintiff's December requests for accommodations were untimely because she was effectively terminated prior to her requests and, second, that no accommodations could forgive her unexcused absences, which warranted immediate termination. *See, e.g.*, doc. 64, Br. The Court reviews these arguments, below. The Court does not analyze the arguments related to Plaintiff's "qualification," as the Court has already found that Plaintiff demonstrated that she was qualified with accommodations on the date the termination decision was made. *See Hamm*, 223 F. App'x at 508.

2.   Effective Termination and Untimely Accommodations Request

Defendants argue that Plaintiff's December requests for accommodations were untimely because the termination process was underway prior to her requests. Doc. 64, Br. at 18-19; doc. 58, Br. at 29. Plaintiff argues that, even if Defendants had a legitimate reason to terminate her, the moment she requested accommodations, Defendants were required to at least engage in the interactive process before terminating her. Doc. 62, Br. at 9-10 (explaining that Defendants are "not entitled to skip the process and terminate Plaintiff before engaging in the required accommodation analysis").[7]

The circumstances here appear similar to a case arising out of a federal district court in Tennessee. In that case, an employee's approved short term disability period had been expired for

_____

[7]Plaintiff cites *Cutrera v. Board of Supervisors* in support of her argument that "[a]n employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended." 429 F.3d 108, 113 (5th Cir. 2005). The analysis in that case does not apply here, however, given material factual differences in that case. In *Cutrera*, the employee had worked for her employer for a mere week when she informed her supervisors of her disability and requested accommodations; as a result, she was terminated. 429 F.3d at 110. The employer offered no legitimate reason for terminating her at that time.

three days when the employee requested accommodations in order to return to work. *Cash v. Siegel-Robert, Inc.*, No. 10-2736-STA-dkv, 2012 U.S. Dist. LEXIS 120117 (W.D. Tenn. Aug. 24, 2012). Rather than engage in the interactive process, the employer terminated the employee after learning of his accommodations request, alleging that the employee had been "effectively" terminated when his disability period had run, even if the actual termination did not occur until several days later and after the request. *Id.* at *46. The court held that "[b]ecause [the employee] had been effectively terminated when he requested the reasonable accommodation, his accommodation request was untimely, and Defendant's failure to consider it did not violate the ADA." *Id.* at *47. The court specifically noted that the employer was not required to consider a request for accommodations when a strict application of its attendance policy required termination and when the employee's request for accommodations did not include a reconsideration of the termination decision. *Id.* at *46-47. The reasoning in *Cash* lends considerable guidance to this Court's analysis.

In this case, Defendants provide summary judgment evidence that Plaintiff had far exceeded the eight allowable unexcused occurrences when she failed to return to work from October 1 (the date at which her position became subject to the attendance policy and her slate of prior absences was wiped clean) through her termination. Defendants explain that Medco LLC was awaiting the results of Plaintiff's final short-term disability benefits appeal to determine if any of Plaintiff's absences would be deemed excused and thus her termination unwarranted under the attendance policy. Doc. 59-18, App. at 612 (Roberts deposition testimony stating that, although she did not make the termination decisions, a denial of Plaintiff's appeal by Aon would result in Plaintiff's termination). On November 26, Aon informed only Plaintiff, and not Medco LLC, of its decision to deny Plaintiff's final appeal. It is reasonable to conclude that Plaintiff was effectively terminated when

her appeal was denied. Doc. 58, Br. at 29; doc. 64, Br. at 18; doc. 59-5, App. at 163 (termination form explaining that Aon's denial of appeal meant absences were unexcused under the attendance policy, requiring her termination); doc. 59-5, App. at 140 (no exceptions to the attendance policy); doc. 59-18, App. at 606 (attendance policy was "strictly enforced"), 634 (employees are always terminated when their absences exceed the allotted number). Plaintiff's request for accommodations, five days after she learned that none of her absences would be excused, was therefore untimely.

The fact that Medco LLC did not actually process Plaintiff's termination until December 9 did not render it obligated to engage in the interactive process instead of terminating Plaintiff. Doc. 59-18, App. at 612; doc. 68, App. at 75. In situations where an employee's termination based on a legitimate, nondiscriminatory reason has been made effective but has not yet been processed, courts must not permit the employee to use the ADA as a shield from being fired by suddenly requesting an accommodation before the ink on her valid termination papers is dry. "The ADA does not . . . create an impenetrable barrier around the disabled employee, preventing the employer from taking any employment actions vis-a-vis the employee." *See Kent v. Roman Catholic Church*, No. 96-1505, 1997 U.S. Dist. LEXIS 859, at *7 (E.D. La. Jan. 22, 1997). The Court thus concludes that Plaintiff's December requests for accommodations were untimely in that she was effectively terminated before the requests were made. Defendants were under no obligation pursuant to the ADA to review those requests.

3.     Forgiving Past Conduct Warranting Immediate Termination

Alternatively, Defendants were not required to engage in the interactive process during the brief interim from the initial December 1 accommodation request to the December 9 termination, because Plaintiff's request for accommodations did not and could not include a request to forgive her

two months of unexcused absences. Courts have consistently explained that a "second chance" or forgiveness of prior misconduct otherwise warranting termination is not a "reasonable accommodation." *Brookins v. Indianapolis Power & Light Co.*, 90 F. Supp. 2d 993, 1006-08 (S.D. Ind. 2000) (citing *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666-67 (7th Cir. 1995)). "Since [a] reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability." *Id.* at 1007 (citing U.S. Equal Opportunity Employment Commission, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act at 24, question number 35); *see Davila v. Qwest Corp.*, 113 F. App'x 849, 854 (10th Cir. 2004) ("[A]s many cases have recognized in various contexts, excusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA."). The Fifth Circuit has explained in a related context that an employer is obligated to provide reasonable accommodations for a disability but is not required to approve a "retroactive accommodation" or "second chance" excusing prior misconduct stemming from the alleged disability. *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 n.14 (5th Cir. 1997) (evaluating alcoholism under pre-2008 version of the ADA and Rehabilitation Act). "Thus, the ADA does not insulate an employee from adverse action taken by an employer because of misconduct in the workplace, even if his improper behavior is arguably attributable to an impairment." *Lottinger v. Shell Oil Co.*, 143 F. Supp. 2d 743, 758, 768 (S.D. Tex. 2001).

Even if Plaintiff's termination had not been effective until the actual date of termination, December 9, there was no requirement that Defendant consider Plaintiff's request when her misconduct, *i.e.*, multiple absences definitively determined on December 7 to be unexcused, required

her immediate termination. *See* doc. 59-18, App. at 609-10, 616; doc. 68, App. at 4. Plaintiff's arguments in opposition to this holding are either inapposite or unavailing. *See generally* doc. 69, Reply.

This Court concludes that Plaintiff's December requests for accommodations were untimely and did not excuse her multiple unexcused absences requiring immediate termination. Accordingly, Defendant's failure to consider her requests in the week prior to terminating her was not a violation of the ADA. The Court **GRANTS** summary judgment to Defendants and **DENIES** summary judgment to Plaintiffs on the ADA accommodations claim.

C.     *Breach of Contract*

Plaintiff next brings a claim for breach of contract against the Medco Defendants, alleging that they breached an agreement to pay Plaintiff short-term disability benefits. Doc. 33, Am. Compl. ¶¶ 50-53. Defendants move for summary judgment on this claim, and Plaintiff opposes their motion.

Under Texas law, the essential elements of a breach of contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Walker v. Presidium, Inc.*, 296 S.W.3d 687, 693 (Tex. App.–El Paso 2009, no pet.); *Am. Gen. Life Ins. Co. v. Kirsh*, 378 F. App'x 379, 383 (5th Cir. 2010) (citing *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

The pleadings allege that the disability benefits plan Plaintiff received through her employment with Defendant Medco LLC constitutes a binding contract, which the Medco Defendants breached when they failed to award her short-term disability benefits upon her inability to perform her job. Doc. 33, Am. Compl. ¶¶ 50-52. Defendants dispute that a valid contract exists,

arguing that the benefits plan was not a contract. Doc. 58, Br. at 31-32. Defendants point to the language of the plan, which provides that:

> Nothing in this [Summary Plan Description] represents nor is considered an employment contract, and neither the existence of the Medchoice Disability Program nor any statements made by or on behalf of the Company shall be construed to create any promise or contractual right to employment or to the benefits of employment. The Company or you may terminate the employment relationship without notice at any time and for any reason.

Doc. 59-1, App. at 18. The plan also provides that coverage ends upon termination. *Id.* at 14. It explains that the plan may be discontinued or altered at any time and that such changes can be retroactive. *Id.* at 18.

Plaintiff responds that the plan is a contract because Defendants promised to give her benefits if she accepted employment and that once she accepted employment, the promise to give benefits became enforceable, even if it was illusory in part. Doc. 67, Br. at 30-31. She points to two inapposite and distinguishable cases in support of her argument. *Id.*

Courts have explained that a short-term disability policy is not a valid contract in an employment-at-will context, especially where the policy explicitly provides that it does not create contractual rights. *See Hirth v. Metro. Life Ins. Co*, 189 F. App'x 292, 293 (5th Cir. 2006) (applying Texas law and holding that a short-term disability policy is not a valid contract because it explicitly provided that it was not a contract and because the plaintiff's employment was at-will); *Gamble v. Gregg Cnty.*, 932 S.W.2d 253, 255 (Tex. App.–Texarkana 1996, no writ) ("In an employment-at-will situation, an employee policy handbook or manual does not, of itself, constitute a binding contract for the benefits and policies stated unless the manual uses language clearly indicating an intent to do so."); *see also Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993) (holding that

an employment handbook which expressly disclaims that it creates contractual rights does not constitute a contract in an employment at-will context). Taking an independent review of the undisputed language in the plan, the Court agrees that the plan does not constitute a valid, actionable contract. The plan expressly disclaims that it is a contract or creates any contractual rights, doc. 59-1, App. at 18, and it includes a reminder that the at-will employment and the short-term disability benefits attached to the employment may be terminated at any time by either party. *Id.* at 14.

Accordingly, the Court concludes that the disability benefits plan does not constitute a valid contract. Defendants are **GRANTED** summary judgment on the breach of contract cause of action. Given the Court's ruling, it need not consider Defendants' other arguments in support of summary judgment on this claim.

D.    *Texas Insurance Code*

Plaintiff also brings a claim under the Texas Insurance Code, chapter 541, subchapter B, against Medco LLC and Medco Inc. Doc. 33, Am. Compl. ¶¶ 54-57. She alleges that Defendants misrepresented that they would reasonably and objectively assess her short-term disability claim, consider all of the evidence in support of her claim, and rely on qualified experts in reviewing her claim. *Id.* ¶ 56. Defendants moved for summary judgment on this claim, but Plaintiff failed to respond to the matter. Given Plaintiff's failure to respond, and given Defendants' well-reasoned argument with respect to this claim, *see* doc. 58, Br. at 36-38, the Court **GRANTS** summary judgment to Defendants on Plaintiff's Texas Insurance Code claim.

E.    *Breach of Fiduciary Duty*

Plaintiff next raises a claim for breach of fiduciary duty against all Defendants, alleging that

they inappropriately denied her claim for short-term disability benefits. Doc. 33, Am. Compl. ¶¶ 58-60. Defendants move for summary judgment on this claim. Plaintiff failed to address their arguments in her Response, instead focusing on Defendant's arguments with respect to the breach of good faith and fair dealing claim, *see infra*. *See* doc. 67, Br. at 38. Given Plaintiff's failure to respond, and given Defendants' well-reasoned argument with respect to this claim, *see* doc. 58, Br. at 41-42, the Court **GRANTS** summary judgment to Defendants on Plaintiff's breach of fiduciary duty claim as well.

F.     *Breach of Duty of Good Faith and Fair Dealing*

Finally, Plaintiff brings a claim for breach of the duty of good faith and fair dealing against Defendants, alleging that they unfairly denied her short-term disability benefits. Doc. 33, Am. Compl. ¶¶ 61-63. The pleadings allege that the benefits plan constituted an "insurance" agreement between Plaintiff and Defendants, which gave rise to a duty of good faith and fair dealing. *Id.* ¶ 61. Defendants move for summary judgment on this claim, and Plaintiff opposes this request.

"A duty of good faith and fair dealing arises only by express contractual language or when there is a special relationship between the parties." *Bass v. Hendrix*, 931 F. Supp. 523, 524 (S.D. Tex. 1996). Courts have found special relationships to arise in situations where there is an unequal bargaining position between the parties, in the insurance context, and where there is a fiduciary relationship between the parties. *Id.* A common law duty of good faith and fair dealing does not inhere in all contractual relationships. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225 (Tex. 2002); *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983); *Vlasek v. Wal-Mart Stores, Inc.*, No. H-07-0386, 2008 U.S. Dist. LEXIS 3258, at *17-18 (S.D. Tex. Jan. 16, 2008). "The general rule provides that a duty of good faith and fair dealing cannot arise from an at-will employment relationship." *Hirth*, 189 F. App'x at 293; *City of Midland v. O'Bryant*, 18 S.W.3d

209, 216 (Tex. 2000) (holding that "there is no duty of good faith and fair dealing in the employment context").

The Court has already rejected Plaintiff's argument that the plan is a contract. Thus, the only issue remaining is whether there is a "special relationship" between the parties giving rise to a duty of good faith and fair dealing.[8] Plaintiff points to *Arnold v. National County Mutual Fire Insurance Co.*, which held that "[i]n the insurance context[,] a special relationship arises out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims." 725 S.W.2d 165, 167 (Tex. 1987). Doc. 67, Br. at 37. Despite her pleading otherwise, *see* doc. 33, Am. Compl. ¶ 61, Plaintiff admits in her summary judgment response that benefits offered by Defendants here do not turn Defendants into insurers. Doc. 67, Resp. at 37 ("Plaintiff acknowledges that the Texas Supreme Court, in another context, has indicated that an employer providing self-funded employee benefits was not in the business of insurance."). She instead requests that the Court find a similar special relationship akin to one found in the insurance context. *Id.* at 37-38. Specifically, Plaintiff insists that the parties have unequal bargaining power because only Defendant had the right to decide matters related to the disbursement of benefits. *Id.* at 38. Plaintiff also contends that Defendants acted in the same capacity as an ERISA plan administrator when deciding whether Plaintiff was entitled to benefits under the plan, which creates a special relationship. *Id.*

Simply put, Plaintiff has not adequately demonstrated a dispute of fact or law that the plan

---

[8]The pleadings under this count appear to base the breach of the duty of good faith and fair dealing claim only on the alleged "insurance" agreement and not on a "special relationship." *See* doc. 33, Am. Compl. ¶¶ 61-62. However, because Plaintiff contends that the claim is also based on a special relationship, the Court will consider the argument out of an abundance of caution.

is not a contract and did not create a special relationship between the parties. Thus, a duty of good faith and fair dealing does not exist in this case. *See Bass*, 931 F. Supp. at 524. This dispute is not akin to an insured-insurer relationship, but fits squarely within the cases involving at-will employment disputes. *See Hirth*, 189 F. App'x at 293; *O'Bryant*, 18 S.W.3d at 216; *see also Constantine v. Am. Airlines Pension Benefit Plan*, 162 F. Supp. 2d 552, 558 (N.D. Tex. 2001) (holding that an employee flights benefit plan did not give rise to a duty of good faith and fair dealing because no such duty exists in the employment context). The Court concludes that Defendants have shown an entitlement to summary judgment on Plaintiff's breach of duty of good faith and fair dealing claim.

## IV.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Partial Motion for Summary Judgment (doc. 51) and **GRANTS** Defendants' Motion for Summary Judgment (doc. 57).

Because this Order disposes of all claims in this case, the Court **DENIES AS MOOT** Defendants' Motions to Exclude (docs. 78 and 80), both filed on March 20, 2013.

SO ORDERED.

SIGNED: May 27, 2013.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE